COMMONWEALTH vs. SEAN E. BURRELL.

Suffolk.  March 9, 1983. — August 3, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Homicide. Practice, Criminal,* Required finding. *Joint Enterprise.*

At the trial of indictments for murder and armed robbery, where there
   was no evidence introduced as part of the Commonwealth's case in
   chief tending to prove either that the murder was a natural and prob-
   able consequence of the robbery, in which the defendant participated
   in conspiracy with other men, or that the defendant associated himself
   or acted in concert with the slayer, the defendant's motion for a re-
   quired finding of not guilty on the murder indictment should have
   been allowed. [807-808]

INDICTMENTS found and returned in the Superior Court
Department on November 12, 1980.

The cases were tried before *Brogna,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*Matthew H. Feinberg* for the defendant.

*Mark Newman,* Assistant District Attorney (*John N. Tra-
montozzi,* Assistant District Attorney, with him) for the
Commonwealth.

ABRAMS, J.  The defendant, Sean E. Burrell, was convict-
ed of murder in the second degree and armed robbery.[1] The

---

[1] The indictment for murder comprehended murder in the first degree
as well as murder in the second degree.  In his summation, the assistant
district attorney told the jury that a verdict of murder in the second
degree was appropriate.  Cf. *Commonwealth* v. *Dickerson,* 372 Mass.
783, 797 (1977).

On the conviction of murder in the second degree, Burrell was sen-
tenced to the Massachusetts Correctional Institution, Walpole, for the

Commonwealth concedes that it has no evidence that Burrell fired the fatal shot, and rests its case solely on a theory of felony murder, based on joint enterprise. After the guilty verdicts, Burrell appealed, claiming that the judge erred in denying his motion for a required finding of not guilty on the indictment for murder, see Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979), because the evidence in the light most favorable to the Commonwealth is insufficient on the issue of his joint enterprise with the slayer. We agree. We reverse.

We summarize the evidence. "[W]e assume, without deciding, that all questions touching the admissibility of evidence would be resolved in favor of the Commonwealth." *Commonwealth* v. *Fancy*, 349 Mass. 196, 198 (1965). Further, we only consider the evidence introduced during the Commonwealth's case in chief. See *Commonwealth* v. *Soares*, 377 Mass. 461, 464, cert. denied, 444 U.S. 881 (1979); *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 (1976).

On the night of July 4, 1980, Burrell, one Ricky Perry, and one Andrew Sanabria, were seen pursuing, beating, and robbing a young white male in Roxbury.[2] Burrell was seen hitting the victim over the head with a beer bottle. As the three men beat the victim, a crowd of approximately thirty people from a nearby block party gathered, and some members of the crowd also participated in the beating. A few minutes later, at least five men, including Burrell, Perry, and Sanabria were still near the victim when some-

term of his natural life. On the conviction of armed robbery, Burrell was sentenced to a concurrent term of from seven to ten years' imprisonment at M.C.I., Walpole. The defendant's argument that there was error in the juvenile transfer hearing is answered by what we said in *Commonwealth* v. *Watson*, 388 Mass. 536, 539-540 (1983). Burrell has argued no other error on the conviction for armed robbery. Therefore, other claims of error on that conviction are deemed waived. *Commonwealth* v. *Cundriff*, 382 Mass. 137, 150 n.22 (1980), cert. denied, 451 U.S. 973 (1981). Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

[2] Perry was tried separately after the defendant's trial. He was found guilty of assault and battery by means of a dangerous weapon. He was acquitted of murder. The Commonwealth sought and obtained immunity for Sanabria. See G. L. c. 233, §§ 20E, 20F.

one said, "You don't belong around here, white guy," and "Move out of the way." Perry stepped aside and a shot rang out from the crowd. The victim died from the gunshot wound. The defendant and the slayer were close to each other and were approximately fifteen feet from the victim.

After the shooting, the defendant fled to a nearby park where he was seen talking to a tall, thin, light-skinned black male, wearing a blue windbreaker and white pants. The defendant asked this man, "Who's got the weight?"[3] The man placed his hand in his pants, removed it, and then gave Burrell a "dirty look," and walked into the park.

In his statement to the police, the defendant described the killer as a tall, thin, light-skinned male with a medium afro hairstyle, who pulled the gun out from the brown jacket he was wearing. Sanabria described the killer as a male wearing a hat, sunglasses, and a coat or a summer jacket. Sanabria claimed that the murderer took the gun from a white plastic bag.

From these facts the Commonwealth argues that the "defendant knew of the substantial likelihood that death would follow [the armed robbery] and that he was a willing participant in the acts which led to that death."[4] The Commonwealth urges us to conclude that the defendant and the slayer were jointly engaged in a felony (armed robbery) that is "inherently dangerous to human life," and that the homicide, therefore, occurred "in the course of a felony or attempted felony [and was] the natural and probable consequence" of that felony.[5] *Commonwealth* v. *Matchett*, 386

---

[3] "Weight" in street language means "[e]ither drugs or money, whatever you can get in [a] robbery."

[4] The Commonwealth admits that the three men, who originally decided to beat and rob the victim, did not slay the victim, and that Burrell is not the slayer.

[5] The jury properly could have found the defendant guilty of murder if the victim had died from the defendant's blow to his head with a beer bottle, or from the beating inflicted by Burrell, Perry, and Sanabria. See *Commonwealth* v. *Kane*, 388 Mass. 128, 134 (1983); *Commonwealth* v. *Hodge (No. 2)*, 380 Mass. 858, 865 (1980). Since the victim died from the gunshot wound and not from the blows or beating, the Commonwealth tried its case on a theory of joint venture with the slayer.

Mass. 492, 504-505 (1982). See *Commonwealth* v. *Moran,* 387 Mass. 644, 650-651 (1982).

The theory underlying joint enterprise is that "one who aids, commands, counsels, or encourages commission of a crime while *sharing with the principal the mental state required for the crime* is guilty as a principal. . . . The jury may infer the requisite mental state from the defendant's *knowledge of the circumstances* and *subsequent participation* in the offense" (emphasis supplied). *Commonwealth* v. *Soares,* 377 Mass. 461, 470 (1979). There is, however, an absence of evidence that the slayer participated in the robbery or beating. The record does not reveal any evidence from which a reasonable inference could be drawn that the defendant knew the slayer, knew he was armed, knew of his intent to murder the victim, and shared that intent. Cf. *Commonwealth* v. *Watson,* 388 Mass. 536, 544-547 (1983); *Commonwealth* v. *Ferguson,* 365 Mass. 1, 8-9 (1974);[6] *Commonwealth* v. *Mangula,* 2 Mass. App. Ct. 785, 790 (1975).

Even though the Commonwealth did not prove that Burrell was associated with the slayer, it asks us to sustain Burrell's conviction because he was at the scene and participated in the robbery. This we cannot do. "No person can be held guilty of homicide unless the act is either actually or constructively his, and it cannot be his act in either sense unless committed by his own hand or by someone acting in concert with him or in furtherance of a common object or

---

[6] Similarly, the Commonwealth's suggestion, made for the first time on appeal, that the defendant knowingly "associated [himself] with an enterprise that contemplated an intentional killing," is also without evidentiary support in the record. At the request of the Commonwealth, Sanabria testified as a witness under a grant of immunity. See G. L. c. 233, §§ 20E, 20F. Even with Sanabria as an immunized witness, the Commonwealth was unable to produce any evidence that Burrell associated himself in any way with the slayer. We add that "[w]hen as here, a mob is involved in circumstances in which their understanding, intent and purpose may vary, it is difficult, but no less necessary that the basis of liability of the members of the mob be defined in the light of those sundry understandings, interests or purposes." *State* v. *Madden,* 61 N.J. 377, 396 (1972).

purpose." *Commonwealth* v. *Balliro*, 349 Mass. 505, 513 (1965), quoting *Commonwealth* v. *Campbell*, 7 Allen 541, 544 (1863). "Without such limitation, a person might be held responsible for acts which were not the natural or necessary consequences of the enterprise . . . in which he was engaged, and which he could not either in fact or in law be deemed to have contemplated or intended." *Commonwealth* v. *Campbell, supra.*

Since the Commonwealth did not produce any evidence that the murder was a natural and probable consequence of the robbery, or that the defendant associated himself or acted in concert with the slayer, the defendant's motion for a required finding of not guilty of murder should have been allowed.[7] See *Jackson* v. *Virginia*, 443 U.S. 307, 316 (1979) (the Commonwealth is required "to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense").

On the indictment for armed robbery the judgment is affirmed. See note 1, *supra.* On the indictment for murder, the judgment is reversed and the verdict set aside. Judgment is to be entered for the defendant.

*So ordered.*

---

[7] Since "the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient, the only 'just' remedy available for that court is the direction of a judgment of acquittal." *Burks* v. *United States*, 437 U.S. 1, 18 (1978).