COMMONWEALTH *vs.* JUAN R. ORTIZ.

Hampden. May 7, 1990. - October 16, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Homicide. Felony-Murder Rule. Firearms. Joint Enterprise. Assault and Battery by Means of a Dangerous Weapon. Attempt.*

In a criminal case, the evidence was sufficient to warrant the defendant's convictions on two indictments for second-degree murder based on a felony-murder theory. [467]

At a murder trial, no substantial risk of a miscarriage of justice was demonstrated by the judge's instructions on the principles of felony-murder, nor in the circumstances was any such risk occasioned by the judge's omitting to instruct the jury on the principles of joint venture with respect to the underlying felony. [467-469]

Discussion of the Massachusetts cases construing the elements of the crime of attempt to commit a crime. [470-472]

The evidence presented at the trial of an indictment for attempted assault and battery by means of a dangerous weapon was insufficient to sustain a conviction where no overt act toward the commission of the offense was proved. [472-473]

INDICTMENTS found and returned in the Superior Court Department on November 22, 1985.

The case was tried before *John F. Murphy, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John M. Thompson* (*Linda J. Thompson* with him) for the defendant.

*Elizabeth Dunphy Farris*, Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. A jury found the defendant guilty of murder in the second degree as charged in two indictments, based on a felony-murder theory, and of unlawfully carrying a firearm under his control in a vehicle, attempted assault

and battery by means of a dangerous weapon on Jose Rodriguez, and unlawful possession of firearm ammunition. The indictment for possession of firearm ammunition was filed with the defendant's consent. The defendant was sentenced for the other crimes and appealed. We transferred the case from the Appeals Court to this court on our own initiative. We now affirm the two convictions of murder in the second degree and unlawfully carrying a firearm in a vehicle. We reverse the conviction of attempted assault and battery by means of a dangerous weapon on Jose Rodriguez.

At the close of the Commonwealth's case, and again at the close of all the evidence, the defendant moved for required findings of not guilty on all the indictments. The judge denied those motions as well as similar postverdict motions. On appeal, the defendant argues that the judge's rulings with respect to the sufficiency of the evidence to support the convictions of murder and assault and battery by means of a dangerous weapon were erroneous.

In reviewing the trial judge's rulings on the motions for required findings of not guilty, we consider whether the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to permit a jury to infer beyond a reasonable doubt the essential elements of the crimes charged. *Commonwealth* v. *Walsh*, 407 Mass. 740, 741 (1990). *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979).

The evidence most favorable to the Commonwealth in this case may be fairly summarized as follows. On November 12, 1985, the defendant and his brother, Eddie Ortiz, left their father's apartment in Springfield and got into an automobile to search for Jose Rodriguez. The Ortiz and Rodriguez families had had a longstanding feud. The Ortizes believed that Jose Rodriguez was one of three men who had been at the father's apartment earlier on November 12 with what looked like a handgun. They were looking for Eddie. Eddie and the defendant brought a firearm and some ammunition with them in the automobile. Eddie drove the automobile to the neighborhood in which Rodriguez lived and drove around the block six times hoping to find him. Rodriguez was not found,

so Eddie drove the automobile back to his father's apartment. While Eddie was driving, the gun lay fully loaded in the front passenger compartment of the automobile, between the defendant and Eddie.

As the Ortiz vehicle was arriving at the apartment, a police cruiser with two officers in it, with its lights flashing, pulled up behind the vehicle. The driver of the cruiser, Officer Alain Beauregard, got out and approached the driver's side of the Ortiz vehicle. His partner, Michael Schiavina, briefly remained in the police cruiser to use the car radio. Beauregard tried unsuccessfully to open the driver's side door of the Ortiz vehicle, after which he was shot and killed by Eddie. By then, Schiavina had opened the vehicle's passenger door and was trying to pull the defendant from the vehicle. Schiavina was then shot and killed by Eddie. There was evidence that, as the police officers approached the automobile, both the defendant and Eddie reached for the firearm but Eddie grabbed it first. There was no evidence that the defendant fired the gun. After the shootings, the defendant and Eddie fled the scene. The defendant was found several hours later hiding in a tent in the backyard of his sister's home. Eddie committed suicide before he could be taken into custody.

As to the murder indictments, the Commonwealth's theory at trial was that the defendant was guilty of felony-murder because the two homicides took place during the commission of one or more of the following felonies for which the defendant was responsible: unlawfully carrying a firearm in a motor vehicle; attempted assault and battery by means of a dangerous weapon on Rodriguez; attempted assault by means of a dangerous weapon on Rodriguez. By a special verdict, the jury found unlawfully carrying a firearm in a motor vehicle to be the sole predicate felony underlying the two felony-murder convictions.

"As developed by the case law, the felony-murder rule in the Commonwealth imposes criminal liability for homicide on all participants in a certain common criminal enterprise if a death occurred in the course of that enterprise." *Common-*

*wealth* v. *Matchett*, 386 Mass. 492, 502 (1982), quoting *Commonwealth* v. *Watkins*, 375 Mass. 472, 486 (1978). In order to invoke the felony-murder rule in this case, the Commonwealth first had the burden to establish that the defendant was a participant in a felonious enterprise. The Commonwealth was required to prove in that regard that the defendant intentionally encouraged or assisted Eddie Ortiz in the commission of a felony and that he did so while sharing with Eddie Ortiz the mental state required for that crime. *Commonwealth* v. *Ambers*, 370 Mass. 835, 839 (1976). *Commonwealth* v. *Richards*, 363 Mass. 299, 307 (1973). In addition, the Commonwealth had to prove that the homicides occurred in the course of that enterprise. For the killings to have occurred in the course of the only felonious enterprise found by the jury to have been the predicate felony, the unlawful carrying of a firearm in a vehicle, the killings and the felonious carrying need only to have occurred as part of one continuous transaction. It was not necessary for the Commonwealth to show that the homicides occurred while the carrying of the firearm was still in progress, as long as the homicides were connected with and incident to the carrying and as long as the carrying and the homicides took place at substantially the same time and place. It would be enough if the homicides occurred as part of the defendant's effort to escape responsibility for the underlying felony. *Commonwealth* v. *Tarver*, 369 Mass. 302, 315-317 (1975). *Commonwealth* v. *Dellelo*, 349 Mass. 525, 529-530 (1965). *Commonwealth* v. *Gricus*, 317 Mass. 403, 412 (1944). *Commonwealth* v. *Green*, 302 Mass. 547, 555 (1939). *Commonwealth* v. *Osman*, 284 Mass. 421, 425 (1933).

In addition, in order for this case to come within the felony-murder rule, the underlying felony — the carrying of a firearm in a vehicle — must be inherently dangerous to human life or the crime actually must have been committed with conscious disregard on the part of the defendant for the risk to human life. *Commonwealth* v. *Carter*, 396 Mass. 234, 234-235 (1985). *Commonwealth* v. *Moran*, 387 Mass. 644, 648-651 (1982). *Commonwealth* v. *Matchett*, 386 Mass.

492, 502-505 (1982). Also, for the rule to apply, the deaths must have been natural and probable consequences of the felony, *id.* at 504-505; *Commonwealth* v. *Devlin*, 335 Mass. 555, 566-567 (1957), and the felony must have been independent of the homicides, see *Commonwealth* v. *Quigley*, 391 Mass. 461, 465-466 (1984), cert. denied, 471 U.S. 1115 (1985).

We are satisfied that the evidence was sufficient to warrant the murder convictions. It is clear that the evidence recited above would warrant a finding that the defendant was a joint venturer with his brother, Eddie Ortiz, in carrying a firearm in a vehicle. Furthermore, while it may be fairly arguable that carrying a firearm in a vehicle is not inherently dangerous (especially if the firearm is not loaded), the jury in any event reasonably could have found that the defendant in this case committed that crime with conscious disregard for the risk to human life because of the obvious risk presented by the defendant and his brother's driving around with a loaded .357 Magnum revolver between them looking for an individual with whom their family had a longstanding feud.

There was evidence of the other elements of felony-murder, too. The same evidence that supported a finding of the defendant's conscious disregard for the risk to human life also warranted a finding that homicide was a natural and probable consequence of the felonious carrying of a firearm. Finally, the jury could properly have found that the underlying felony, one that was clearly independent of the homicides in the sense that it was distinct from the acts of violence which resulted in the police officers' deaths, and therefore not offensive to the rule of *Commonwealth* v. *Quigley*, 391 Mass. 461, 466 (1984), was sufficiently connected with and incident to the homicides for the felony-murder rule to apply. We note as well the presence of consciousness of guilt evidence, in the form of evidence of flight. We conclude that the evidence was sufficient to warrant the two verdicts of murder in the second degree.

Before confronting the defendant's argument that the evidence was insufficient to warrant his conviction of attempted

assault and battery by means of a dangerous weapon on Jose Rodriguez, we address other contentions that the defendant makes with respect to the murder convictions. Although the defendant did not object at trial to the judge's instructions to the jury, he argues on appeal that the judge committed reversible error by failing to instruct the jury that the defendant could not be found guilty of murder on a theory of felony-murder, with the weapon carrying charge as the predicate felony, unless the jury were to find that, with respect to that felony, the defendant was engaged in a joint venture with Eddie Ortiz. The defendant also argues that the judge failed to instruct the jury that the defendant could be found guilty of murder on a felony-murder theory, with carrying a firearm in a vehicle as the underlying felony, only if the jury were to find that the homicides were the natural and probable consequences of that felony.

Because the defendant did not object to the jury instructions, our review of the instructions is limited to a determination whether there is a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). In response to the Commonwealth's request, the judge charged the jury that they should decide whether the defendant was a joint venturer with Eddie Ortiz with respect to the crime of attempted assault and battery with a dangerous weapon. However, in connection with the indictment for carrying a firearm in a vehicle, the Commonwealth informed the judge that it was not proceeding on a joint venture theory, but only on the theory that the defendant's possession of the gun in the vehicle was joint possession. As a result, the judge did not instruct the jury concerning joint venture principles as they might apply to that indictment. Since the carrying charge was found by the jury to be the sole predicate felony for application of the felony-murder rule, and since there was no evidence that the defendant personally shot the police officers, the defendant argues not only that the judge committed error by omitting from his charge any discussion of joint venture and its importance in assessing the defendant's guilt on the murder indictment based on the carrying

charge, but also he contends that the omission was seriously prejudicial.

We are not persuaded by the defendant's argument. As we have discussed above, the evidence warranted a finding of joint venture as to the carrying charge, and, in our view, in light of the jury's finding that the defendant was guilty of carrying a firearm without reference to a joint venture theory, it is highly unlikely that, had the jury been instructed as to joint venture principles in connection with the carrying charge, the jury's verdicts on the murder indictments would, have been different. It seems probable that, correctly instructed, the jury would have been satisfied beyond a reasonable doubt that the defendant assisted or encouraged Eddie Ortiz to carry the .357 Magnum revolver and shared with him the intent to do so.

Lastly, with respect to the jury instructions concerning the murder indictments, we conclude that the judge's failure to instruct the jury that the defendant was not responsible for the homicides unless the jury were to find that they were the natural and probable consequences of the underlying felony, while constituting error, did not create a substantial risk of a miscarriage of justice within the rule laid down by *Commonwealth* v. *Freeman, supra.* The evidence set forth earlier in this opinion not only was legally sufficient to warrant a finding that the homicides were foreseeable consequences of Eddie Ortiz and the defendant's jointly carrying a firearm in a vehicle, but also appears to be sufficiently persuasive to counter the contention that there is a substantial risk that, correctly instructed, the jury would not have found that the homicides were natural and probable consequences of the felony.

The defendant has made a plethora of other arguments relative to the murder convictions. He argues here for the first time that the judge erred by instructing the jury that they could consider evidence of the defendant's flight as bearing on consciousness of guilt. There was no error in this regard. The defendant also argues that the judge improperly admitted evidence offered by the Commonwealth, permitted

improper forms of direct examination of government witnesses, excluded relevant evidence offered by the defendant on both direct and cross-examination, and allowed unfair closing argument by the prosecutor. We have carefully considered these arguments taking into account that the evidence and closing argument now objected to were not objected to at trial. We conclude that, if there was any error, it was minimal and did not present a substantial risk of a miscarriage of justice. Furthermore, we reject the defendant's contention that, in numerous respects, the defendant was prejudiced by not having received effective assistance of counsel. We are not persuaded that counsel's action or inaction "likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

We turn to the defendant's challenge to the sufficiency of the evidence to warrant a finding that the defendant was guilty of attempted assault and battery with a dangerous weapon on Jose Rodriguez, the man for whom, according to the evidence, Eddie Ortiz and the defendant searched unsuccessfully. General Laws c. 274, § 6 (1988 ed.), provides that "[w]hoever attempts to commit a crime by doing any act toward its commission, but fails in its perpetration, or is intercepted or prevented in its perpetration, shall, except as otherwise provided, be punished . . . ." There is little Massachusetts case law construing and applying this statute. The statute requires not only an intention to commit the underlying offense, see *Commonwealth* v. *Ware*, 375 Mass. 118, 120 (1978), but also an overt act toward its commission, *Commonwealth* v. *Gosselin*, 365 Mass. 116, 121 (1974); *Commonwealth* v. *Foley*, ·24 Mass. App. Ct. 114, 115 (1987).

In *Commonwealth* v. *Kennedy*, 170 Mass. 18, 20 (1897), we "assume[d] that an act may be done which is expected and intended to accomplish a crime, which is not near enough to the result to constitute an attempt to commit it . . . ," and in *Commonwealth* v. *Peaslee*, 177 Mass. 267 (1901), we considered how proximate the overt act must be

to the completion of the underlying offense to constitute a criminal attempt. *Peaslee* involved an indictment for an attempt to burn a building and its contents in order to defraud insurers. The evidence showed that "the defendant had constructed and arranged combustibles in the building in such a way that they were ready to be lighted, and if lighted would have set fire to the building and its contents. . . . The defendant offered to pay a young man in his employment if he would go to the building . . . and carry out the plan. This was refused. Later the defendant and the young man drove toward the building, but when within a quarter of a mile the defendant said that he had changed his mind and drove away. This is as near as he ever came to accomplishing what he had in contemplation." *Id.* at 271.

The court, in *Peaslee*, in an opinion written by Chief Justice Holmes, reasoned: "The statute does not punish every act done toward the commission of a crime, but only such acts done in an attempt to commit it. The most common types of an attempt are either an act which is intended to bring about the substantive crime and which sets in motion natural forces that would bring it about in the expected course of events but for an unforeseen interruption, as in this case if the candle had been set in its place and lighted but had been put out by the police, or an act which is intended to bring about the substantive crime and would bring it about but for a mistake of judgment in a matter of nice estimate or experiment, as when a pistol is fired at a man but misses him, or when one tries to pick a pocket which turns out to be empty. In either case the would-be criminal has done his last act. . . . That an overt act although coupled with an intent to commit the crime commonly is not punishable if further acts are contemplated as needful, is expressed in the familiar rule that preparation is not an attempt. But some preparations may amount to an attempt. It is a question of degree. If the preparation comes very near to the accomplishment of the act, the intent to complete it renders the crime so probable that the act will be a misdemeanor although there is still a *locus penitentiae* [opportunity to withdraw] in the need of a

further exertion of the will to complete the crime. As was observed in a recent case, the degree of proximity held sufficient may vary with circumstances, including among other things the apprehension which the particular crime is calculated to excite. *Commonwealth* v. *Kennedy*, 170 Mass. 18, 22 [1897]." *Id.* at 271-272.

In reversing the conviction, the *Peaslee* court concluded that, although the evidence was sufficient to show that the defendant had an intent to set the fire himself, the evidence was insufficient for conviction on that theory because it did not show that he had that intent "at a time and place where he was able to carry it out." *Id.* at 273-274. "On the other hand," the court said, "if the offence [was] to be made out by showing a preparation of the room and a solicitation of some one else to set the fire, which solicitation if successful would have been the defendant's last act, the solicitation must be alleged [in the indictment] as one of the overt acts." *Id.* at 274. Since the solicitation was not alleged in the indictment, the conviction was reversed.

We think that the lesson of the *Kennedy* and *Peaslee* cases is that, even though the evidence would have warranted a finding that the defendant intended and prepared for an assault and battery by means of a dangerous weapon on Jose Rodriguez, the evidence was insufficient to show a violation of G. L. c. 274, § 6, because it did not warrant a finding of an overt act for which the defendant was responsible.

Our decision is in accord with the decisions in *People* v. *Rizzo*, 246 N.Y. 334, 336-339 (1927), and *State* v. *Christensen*, 55 Wash. 2d 490, 491-493 (1960). We are aware that statutes in a few other States and the Model Penal Code, § 5.01 (2) (Proposed Official Draft 1962) ("lying in wait, searching for or following the contemplated victim of the crime," if such conduct is "strongly corroborative of the actor's criminal purpose," "shall not be held insufficient [to constitute an attempt] as a matter of law"), would call for a different result. However, to date the Legislature in this Commonwealth has not enacted such a statute, and we therefore follow the trend of our decisions, as few as they may be.

The judgments on the murder indictments are affirmed. The judgment on the indictment for attempted assault and battery by means of a dangerous weapon is reversed and the verdict is set aside. Because the defendant has made no argument within the meaning of Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975), regarding his conviction of unlawfully carrying a firearm in a vehicle, the judgment on that indictment is affirmed.

*So ordered.*