USCA1 Opinion

 

 March 28, 1994 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1656 JUAN R. ORTIZ, Petitioner, Appellant, v. LARRY DUBOIS, Respondent, Appellee. ____________________ ERRATA SHEET The opinion of this court issued on March 24, 1994, is amended as follows: On page 17, lines 4-6, change "we do not believe that appellant could meet the burden recently placed on him by the Supreme Court: that the instructional error" to "we believe that the government has met its burden of demonstrating that the error did not". On page 17, line 6, change "had" to "ha[ve]". On page 24, line 14: Change "February" to "March". UNITED STATES COURT OF APPEAL FOR THE FIRST CIRCUIT ____________________ No. 93-1656 JUAN R. ORTIZ, Petitioner, Appellant, v. LARRY DUBOIS, Respondent, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ____________________ Before Cyr, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ John M. Thompson, with whom Linda J. Thompson was on brief for _________________ __________________ appellant. Nancy W. Geary, Assistant Attorney General, with whom Scott ________________ _____ Harshbarger, Attorney General, was on brief for appellee. ___________ ____________________ March 24, 1994 ____________________ BOWNES, Senior Circuit Judge. This is an appeal BOWNES, Senior Circuit Judge. _____________________ from the denial of a habeas petition filed by Juan Ortiz challenging his Massachusetts felony-murder conviction. Appellant argues that his right to due process of law under the Fourteenth Amendment was violated because: (1) the jury was not instructed to find all of the essential elements of felony-murder beyond a reasonable doubt; (2) the Massachusetts Supreme Judicial Court (SJC) affirmed his felony-murder conviction applying a legal theory not presented to the jury; and (3) there was insufficient evidence to support his felony-murder conviction under the Commonwealth's theory of guilt. The district court denied the petition. We affirm, but for reasons substantially different than those expressed by the court below. I. I. BACKGROUND BACKGROUND __________ We commence with a recitation of the pertinent facts. Appellant's convictions are based on the events of November 12, 1985. That evening, appellant and his brother, Eduardo "Crazy Eddie" Ortiz, left their father's apartment at 8 Stebbins Street in Springfield, Massachusetts to search for Jose Rodriguez. Apparently there was an ongoing dispute between Eddie and various members of the Rodriguez family. In addition, there was evidence that several members of that family, one who was believed to be Jose, paid a visit to the -2- 2 Stebbins Street apartment on the day in question looking for Eddie. One of the visitors allegedly carried a gun. Prior to departing with appellant, Eddie procured a .357 Magnum and ammunition from his brother-in-law, which he placed in his pants pocket. There was evidence to the effect that appellant agreed to accompany Eddie in order to provide "back up." On the other hand, appellant introduced evidence that he vehemently opposed his brother's mission, and went along in order to serve as a voice of reason. With Eddie behind the wheel and appellant at his side, the two drove off in search of their prey. En route, Eddie pulled over to the curb, removed the gun and ammunition from his pocket, loaded the gun, and placed it between himself and his brother. After circling the intended victim's block several times, the brothers were unable to locate him, and returned to their father's apartment. Upon their arrival in front of 8 Stebbins Street, a police cruiser manned by two officers pulled up behind them. The driver of the cruiser got out and approached the driver's side of the Ortiz vehicle. As the officer attempted to open the driver's side door, he was shot in the face and killed by Eddie. By that time the second officer was trying to pull appellant out of the passenger side door. Eddie shot and killed him as well. -3- 3 There was evidence that, as the officers approached the vehicle, both appellant and his brother reached for the gun, but Eddie got to it first. After the shooting, both fled the scene. Appellant was apprehended shortly thereafter. Eddie committed suicide before he could be taken into custody. On November 22, 1985 a five count indictment was returned against appellant. He was charged with two counts of second degree murder, one for the death of each officer, unlawful carrying of a firearm under his control in a motor vehicle, and attempted assault and battery with a dangerous weapon, all felonies.1 The Commonwealth informed appellant that, with respect to the murder indictment, it would be proceeding on a theory of felony-murder. It designated the latter two felonies as predicates for the felony-murder charge. Appellant's trial commenced in January 1987. At the close of the Commonwealth's case and again at the close of all the evidence appellant unsuccessfully moved for findings of not guilty on all counts. The jury found appellant guilty on all counts. On attempted assault and battery by means of a dangerous weapon, the jury convicted ____________________ 1Appellant was also charged with unlawful possession of ammunition, a misdemeanor. Although appellant was ultimately convicted on this count, by agreement with the Commonwealth he was never sentenced on it. -4- 4 appellant of being a "joint venturer" with his brother. With regard to the unlawful carrying charge, the jury found that appellant "jointly possessed" the gun with his brother. By special verdict, the jury found the unlawful carrying charge to be the sole predicate felony underlying the felony-murder convictions. Subsequent to the close of the evidence but before the judge instructed the jury, the Commonwealth informed the court that, in connection with the unlawful carrying charge, it would not be proceeding on a joint venture theory, but rather on a basis that appellant "jointly possessed" the gun with his brother. As a result, the judge did not instruct the jury on joint venture principles as to the unlawful carrying charge.2 ____________________ 2At a pre-charge conference after the close of the evidence and just prior to the charge, the following discussion took place: The Court: As I understand the Commonwealth's case, the joint venture theory applies to the attempted A&B. Commonwealth: Yes. The Court: You understand that? Defendant: I understand that. The Court: It doesn't apply to the carrying of the gun other than its your contention there is joint possession of the gun. Commonwealth: Right, and joint carrying, in that sense, when they stopped the car, there's only one gun. He took out the cartridges and loaded the gun. In essence, at that stage, we are saying that both of them were carrying the gun. -5- 5 After the jury rendered its verdict, appellant renewed his motion for findings of not guilty. The motion was denied in its entirety, and appellant appealed. On its own initiative, the SJC removed the case from the Appeals Court. The SJC affirmed the convictions for felony-murder and unlawfully carrying a firearm in a vehicle. Finding no overt act, however, it reversed the conviction for attempted assault and battery by means of a dangerous weapon. On direct appeal, appellant alleged, inter alia, _____ ____ that the evidence was insufficient to support his felony- murder conviction, and that the jury instructions on this charge were defective. The SJC rejected appellant's sufficiency claim but indicated that the jury had not been correctly instructed. Commonwealth v. Ortiz, 560 N.E.2d 698, ____________ _____ 701-02 (Mass. 1990). Because appellant had not made a timely objection to the jury charge, however, the SJC did not review the error for constitutional infirmity, but instead looked to see whether the error created a substantial likelihood of a miscarriage of justice. Id. at 701. The court held that it ___ did not. Id. at 702. ___ Appellant then filed a petition for a writ of habeas corpus in the United States District Court for the ____________________ The Court: When I talk about joint enterprise and joint possession, I am talking about two different things. I will give it to the jury that way. -6- 6 District of Massachusetts. The district court ruled that the jury instructions on felony-murder were correct and that the evidence supporting this charge was constitutionally sufficient. This appeal ensued. -7- 7 II. II. DISCUSSION DISCUSSION __________ Appellant's first argument is that his right to due process was violated because the jury was not properly instructed on the elements of felony-murder under Massachusetts law, and therefore did not find every element of the offense beyond a reasonable doubt. See In re Winship, ___ _____________ 397 U.S. 358 (1970). The Commonwealth steadfastly maintains that there was no error in the jury instructions. On the charge of felony-murder the trial court instructed the jury as follows: The felony-murder rule, where applicable, is based on the theory that the intent to commit the underlying, independent felony is equivalent to the malice aforethought necessary for a murder conviction. In order to find the Defendant guilty of second degree murder under the felony murder rule, the Commonwealth must prove the following three elements beyond a reasonable doubt. First, that there was an unlawful killing. Second, that the homicide was committed in the course of a felony or attempted felony which felony was independent of the homicide. Third, that under the circumstances of this case the Defendant committed the felony or attempted felony with a conscious disregard for human life. Although the judge elaborated more fully on the second element, he incorporated by reference his previous definitions of the two possible predicate felonies: -8- 8 attempted assault and battery by means of a dangerous weapon and unlawful carrying of a firearm in a motor vehicle.3 On the unlawful carrying charge the judge instructed the jury that the prosecution needed to prove three elements beyond a reasonable doubt: First, that the Defendant, Juan Ortiz, carried a firearm on his person or under his control in a motor vehicle. Second, that what was carried or that which was under the Defendant's control met the definition of firearm under our law .... And third, that the Defendant knew that he was carrying the firearm or that he had the firearm under his control in a vehicle. ... Carrying occurs when the Defendant knowingly has more than momentary possession or control of a working firearm and moves it from one place to another. ... The control exercised by the Defendant over the area where the weapon is found need not have been exclusive. A Defendant may have control of a weapon jointly with another if he is in a position to exercise dominion or control over the weapon and that [sic] he intends to do so. With regard to the element of control, the Commonwealth must prove beyond a reasonable doubt that Juan Ortiz knew of the presence and the location of the weapon in the motor vehicle, that Juan Ortiz was in a position to be able to exercise dominion and control over the weapon together with an intent to exercise such dominion and control. ____________________ 3The jury was also instructed on the lesser included offense of attempted assault by means of a dangerous weapon. -9- 9 The judge then explained what the prosecution needed to prove in order to convict appellant of unlawful carrying, with specific reference to the evidence presented at trial: [O]ne, that the Defendant, Juan Ortiz, was a passenger in the AMC Hornet driven by Eduardo when they left 8 Stebbins Street and at the time they were apprehended by the two police officers on their return. And, two, that the firearm was in the AMC Hornet and that Juan Ortiz knew that it was there. And, three, that Juan Ortiz had joint dominion and control of the firearm with Eduardo and intended to exercise dominion and control. Under the felony-murder rule in Massachusetts, "`a homicide committed during the commission or attempted commission of a felony is murder.'" Commonwealth v. Pope, ____________ ____ 549 N.E.2d 1120, 1123 (Mass. 1990) (quoting Commonwealth v. ____________ Silva, 447 N.E.2d 646, 652 (Mass. 1983)). The common law _____ doctrine of felony-murder is one of constructive malice, which allows the prosecution to substitute the mens rea required for the underlying felony for the state of mind required for murder. See Commonwealth v. Balliro, 209 N.E.2d ___ ____________ _______ 308, 312 (Mass. 1965). It thus relieves the prosecution of its burden of proving the essential element of malice aforethought. Id. Nonetheless, "`[n]o person can be held ___ guilty of homicide unless the act is either actually or constructively his, and it cannot be his act in either sense -10- 10 unless committed by his own hand or by someone acting in concert with him or in furtherance of a common object or purpose.'" Balliro, 209 N.E.2d at 312 (quoting Commonwealth _______ ____________ v. Campbell, 7 Allen 541, 544 (1863)). "`Without such ________ limitation, a person might be held responsible for acts which were not the natural or necessary consequence of the enterprise . . . in which he was engaged, and which he could not either in fact or law be deemed to have contemplated or intended.'" Commonwealth v. Burrell, 452 N.E.2d 504, 506 ____________ _______ (Mass. 1983) (quoting Campbell, 7 Allen at 544). ________ This "limitation" gives rise to the joint venture or joint enterprise requirement. Under Massachusetts law, "one who aids, commands, counsels, or encourages commission of a crime while sharing with the principal the mental state required for the crime is [a joint venturer and is therefore] guilty as a principal . . . ." Burrell, 452 N.E.2d at 505 _______ (quoting Commonwealth v. Soares, 387 N.E.2d 499, 506, cert. ____________ ______ _____ denied, 444 U.S. 881 (1979)). ______ For the purposes of this case, the joint venture requirement operates in the following manner. When a defendant is accused of personally killing another in the course of committing a felony, then his intent to commit the underlying felony may be substituted for the malice necessary for a murder conviction. If, on the other hand, it is unclear which one of several co-felons killed the victim, -11- 11 then the Commonwealth must prove the existence of a joint venture to commit the underlying felony in order to obtain a felony-murder conviction against any of the co-felons. See ___ Burrell, 452 N.E.2d at 505-06. Similarly, where a _______ defendant's co-felon was the actual killer, in order to convict the defendant of felony-murder, the state is required to prove the existence of a joint venture to commit the underlying felony. See Ortiz, 560 N.E.2d at 700 (citing ___ _____ cases). The Commonwealth was required to prove beyond a reasonable doubt that appellant intentionally assisted Eddie in the commission of the felony of unlawful carrying of a firearm in a motor vehicle, sharing with his brother the mental state required for that crime. See Pope, 549 N.E.2d ___ ____ at 1123. On appellant's direct appeal the SJC held: In order to invoke the felony-murder rule in this case, the Commonwealth was required to prove in that regard that the defendant intentionally encouraged or assisted Eddie Ortiz in the commission of a felony and that he did so while sharing with Eddie Ortiz the mental state required for that crime. Ortiz, 560 N.E.2d at 700. The SJC then defined the other _____ elements necessary to prove felony-murder. Appellant maintains that the failure to include a joint venture instruction in connection with the unlawful carrying charge rendered the felony-murder instruction with the carrying charge as the predicate felony defective because -12- 12 it did not render him responsible for Eddie's acts. The Commonwealth argues, consistent with its position throughout appellant's case, that "Massachusetts state law does not require a joint venture instruction where, as here, the predicate felony is a possessory crime . . . ."4 Faced with the SJC's clear statement on the matter, we have no choice but to agree with appellant. The SJC ruled that Ortiz could not be found guilty of felony murder on these facts unless the Commonwealth proved that Ortiz shared with Eddie the mental state required for the predicate felony. Id. But joint possession, the only theory presented ___ by the Commonwealth, does not require proof of concerted action or shared state of mind, and thus, does not offer a basis for vicarious liability for the criminal acts of others. We find it incredible that the Commonwealth has steadfastly refused to recognize the defects in the jury instruction, especially in light of the SJC's careful explanation of what the Commonwealth was required to prove.5 ____________________ 4In its brief to the SJC on appellant's direct appeal the Commonwealth argued that, "joint enterprise and joint possession may not necessarily be one and the same, but, as these theories apply to the facts of this case, there is no distinction." Commonwealth's Brief to the Supreme Judicial Court at 18. 5Of course, the law of Massachusetts is what the SJC says it is. See Cola v. Reardon, 787 F.2d 681, 688 n.5 (1st ___ ____ _______ Cir.), cert. denied, 479 U.S. 930 (1986); Tarrant v. Ponte, _____ ______ _______ _____ 751 F.2d 459, 464 (1st Cir. 1985). -13- 13 In fact, even the SJC acknowledged that the jury was not properly instructed. See Ortiz, 560 N.E.2d at 702. ___ _____ On direct appeal, appellant argued instructional error. But, because he failed to timely object to the charge as required by the Massachusetts contemporary objection rule, see Mass. R. Crim. P. 24(b), the SJC declined to review his ___ claim on the merits and instead limited its inquiry to whether the error gave rise to a substantial likelihood of a miscarriage of justice. Ortiz, 560 N.E.2d at 702. _____ Accordingly, before we can decide whether the instructional error rises to the level of prejudicial constitutional error, we must determine, as a preliminary matter, whether appellant's claim is barred from federal habeas review under the procedural default rule of Wainwright v. Sykes, 433 U.S. __________ _____ 72 (1977). Wainwright held that the failure to timely object __________ at trial to an alleged error as required by a state contemporaneous objection rule constitutes an "independent and adequate state ground" sufficient to foreclose federal habeas corpus review of the alleged error. Id. at 84.6 In ___ ____________________ 6A waiver of the adequate and independent state ground arises where the state's highest court declines to affirm on the basis of state law and conducts a "detailed examination of federal law and federal cases . . . necessary to decide a specific question of federal law." McCown v. Callahan, 726 ______ ________ F.2d 1, 3 (1st Cir.), cert. denied, 469 U.S. 839 (1984); see _____ ______ ___ Doucette v. Vose, 842 F.2d 538, 540 (1st Cir. 1988) (no ________ ____ waiver unless state court makes it "reasonably clear that its reasons for affirming a conviction rest upon its view of -14- 14 order to escape from the preclusive effect of his procedural default, appellant is obligated to show both "cause" for, and "prejudice" from, his noncompliance with the Commonwealth's contemporaneous objection rule. Id. at 86-87; Murray v. ___ ______ Carrier, 477 U.S. 478, 485 (1986). After scrutinizing the _______ record, we can find no indication of cause for appellant's failure to comply with Massachusetts' contemporaneous objection rule. Even assuming cause, however, our review of the record reveals that appellant cannot meet the high burden of showing actual prejudice. To scale this wall, a petitioner must demonstrate "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). _____________ _____ Absent a showing of "cause" and "prejudice," a procedural default may still be excused where failure to hear the claim would result in a "fundamental miscarriage of justice." Murray, 477 U.S. at 495-96. This exception may be ______ ____________________ federal law"). Since the SJC affirmed solely on the basis of Massachusetts law, and did not reach the federal constitutional question raised in appellant's direct appeal, it did not waive his procedural default. See Tart v. ___ ____ Commonwealth of Mass., 949 F.2d 490, 496 (1st Cir. 1991) (SJC _____________________ review for substantial likelihood of a miscarriage of justice is a state law review and does not constitute a waiver of procedural default); Puleo v. Vose, 830 F.2d 1197, 1200 (1st _____ ____ Cir. 1987), cert. denied, 485 U.S. 990 (1988) (same); Gardner _____ ______ _______ v. Ponte, 817 F.2d 183, 185 (1st Cir.), cert. denied, 484 _____ _____ ______ U.S. 863 (1987) (same). -15- 15 invoked where "a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." Id. at 496. In order to satisfy the actual innocence ___ requirement and enable an otherwise barred constitutional claim to be considered on the merits, a petitioner "must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty]." Sawyer v. Whitley, __ U.S. __, __, ______ _______ 112 S. Ct. 2514, 2517 (1992) (involving petitioner's eligibility for the death penalty). Given the evidence presented at trial, we believe that a reasonable jury could have found that appellant _____ engaged in a joint venture with his brother to unlawfully carry a firearm in a motor vehicle. Therefore, there has been no fundamental miscarriage of justice. Because of appellant's state procedural default, the trial court's charge cannot be challenged for prejudicial constitutional error in this proceeding. But, as appellant points out in its brief, the Commonwealth has not argued procedural default. Nonetheless, this court has the authority to raise the issue sua sponte. ___ ______ See Washington v. James, 996 F.2d 1442 (2d Cir. 1993) ("[w]e ___ __________ _____ believe that we may raise the procedural default issue sua ___ sponte"); Hardiman v. Reynolds, 971 F.2d 500, 502-04 & n.4 ______ ________ ________ (10th Cir. 1992) (district court may raise procedural bar -16- 16 defense sua sponte); Hull v. Freeman, 932 F.2d 159, 164 & n.4 ___ ______ ____ _______ (3d Cir. 1991) ("because a state-law procedural default can effect a bar to federal habeas review, we think that it is appropriate for us to consider that issue sua sponte"); cf. ___ ______ ___ Mansfield v. Champion, 992 F.2d 1098, 1099 n.2 (10th Cir. _________ ________ 1993) (court not required to raise state procedural bar defense sua sponte); Fagan v. Washington, 942 F.2d 1155, 1157 ___ ______ _____ __________ (7th Cir. 1991) (by failing to catch petitioner's procedural default, state has waived the defense). We have been unable to find any circuit holding that the issue cannot be raised sua sponte. In fact, the ___ ______ Second Circuit has held, that the principles of comity and federalism dictate that we raise the defense [sua sponte] except in four ___ ______ circumstances: (1) where comity and federalism are not implicated or where they are better served by reaching the merits; (2) where the state is itself at fault for the procedural default; (3) where the alleged federal violation challenges the validity of the state trial itself; or (4) where the alleged federal violation was motivated by malice. Washington v. James, 996 F.2d at 1451. Although we do not __________ _____ embrace Washington, we do note that appellant's case does not __________ fall into any of the four categories. The rule of Wainwright is grounded upon concerns of __________ comity, and was designed in large part to protect the integrity of state procedural rules. See Wainwright, 433 U.S. ___ __________ -17- 17 at 83; Engle v. Isaac, 456 U.S. 107, 129 (1982). Because _____ _____ these concerns implicate "values that transcend the concerns of the parties to an action, . . . it is not exclusively within the parties' control to decide whether such a defense should be raised or waived." Hardiman, 971 F.2d at 503. ________ Where, as is the case here, the state procedural default is clear on the face of the record, it would be a needless expenditure of scarce judicial resources were we to address the merits of appellant's claim. Moreover, even if we reached the merits of this claim, we believe that the government has met its burden of demonstrating that the error did not "`ha[ve] a substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, __ U.S. __, __, 113 S. Ct. ______ __________ 1710, 1714 (1993) (quoting Kotteakos v. United States, 328 _________ ______________ U.S. 750, 776 (1946)). It follows that we would not issue the writ on the basis of this error. Next, appellant argues that his writ should issue because the SJC affirmed his conviction on a legal theory that was not presented to the jury. More precisely, appellant contends that, because the Commonwealth asked that the jury be charged as to joint possession and not joint venture principles in connection with the unlawful carrying charge, it necessarily proceeded on the theory that Juan ___________ Ortiz personally killed the victims. According to appellant, -18- 18 it follows that "the jury instructions required the government to prove beyond a reasonable doubt that Juan Ortiz was personally responsible for the acts that killed each victim."7 Therefore, appellant concludes that the SJC assessed the facts of his case against a legal theory -- joint venture -- that did not reflect the theory on which he was tried. In support of his position, appellant relies primarily on Cole v. Arkansas, 333 U.S. 196 (1948). ____ ________ In Cole, an information charged the defendants with ____ violation of 2 of an Arkansas criminal statute. They were subsequently tried and convicted of 2 violations. Cole, ____ 333 U.S. at 198. The state supreme court affirmed defendants' convictions on the ground that they violated 1 of the same statute, which describes an offense separate and distinct from the offense described in 2. Id. The Supreme ___ Court found that the defendants "were clearly tried and convicted by the jury for promoting an unlawful assemblage made an offense by 2, and were not tried for the offense of using force and violence as described in 1." Id. at 199. ___ The Court added that, "without completely ignoring the judge's charge, the jury could not have convicted petitioners for having committed the separate, distinct, and ____________________ 7In effect, on this claim appellant argues that the jury instructions were not defective, but rather, embodied a valid theory of felony-murder which did not require proof of a joint venture. -19- 19 substantially different offense defined in 1." Id. at 200. ___ We have recognized, consistent with Cole, that "[a]n ____ appellate court may not lawfully sustain a conviction on a theory entirely different from the theory upon which the jury was charged." United States v. Gomes, 969 F.2d 1290, 1295 _____________ _____ (1st Cir. 1992); see United States v. Anguilo, 897 F.2d 1169, ___ _____________ _______ 1197 (1st Cir.), cert. denied, 498 U.S. 845 (1990). _____ ______ An appellate court may not go outside of the prosecution's trial theory to affirm a conviction because a criminal defendant must have notice of the charges against him and an opportunity to be heard in a trial on the issues raised by those charges. Cole, 333 U.S. at 201. Further, a ____ criminal defendant also has the right to trial by jury as opposed to trial by an appellate tribunal. See, e.g., Dunn ___ ____ ____ v. United States, 442 U.S. 100 (1979) (appeals court affirmed _____________ conviction based upon specific acts, the alleged criminality of which the defendant was never afforded notice); Cola v. ____ Reardon, 787 F.2d 681 (1st Cir.) (same), cert. denied, 479 _______ _____ ______ U.S. 930 (1986). According to appellant, Cole is controlling here. ____ We disagree. In general, the concerns expressed in Cole are ____ implicated where an appellate court in effect "charges" a defendant with a new crime, and then concludes that the evidence was sufficient to support a conviction for that previously uncharged offense. Thus, if the prosecution -20- 20 decides to submit a case to the jury on one of two equally valid legal theories, and the jury convicts despite insufficient evidence, on appeal the court cannot resurrect the conviction by ruling that there was sufficient evidence to convict on the alternative theory. See Saylor v. ___ ______ Cornelius, 845 F.2d 1401, 1403-04 (6th Cir. 1988); United _________ ______ States v. Hill, 835 F.2d 759, 764 (10th Cir. 1987). This is ______ ____ not what happened here. In the first place, contrary to appellant's contention, the jury instructions did not require the ___ Commonwealth to prove that appellant shot the officers in order to convict him of felony-murder. Rather, the jury was instructed that, although the Commonwealth did not claim that ___ appellant killed the officers, it could still convict him of felony-murder if, inter alia, he committed the felony of _____ ____ unlawful carrying while jointly possessing the gun with his brother.8 Furthermore, after scanning the record, we are unable to see how the concerns expressed in Cole are ____ implicated in this case. From the outset of this action the Commonwealth and the defense proceeded on the shared ____________________ 8In fact, appellant has acknowledged that "the government's `joint possession' theory as a felony-murder theory of joint accountability is a fiction in terms of Massachusetts law." This comports with the view that the jury instructions did not require the jurors to determine whether appellant personally shot the victims, but rather, were defective under state law. -21- 21 understanding that Eddie killed the officers, and that Juan could be convicted of felony-murder only on the basis of Eddie's actions. This is consistent with the bill of particulars, this was how the case was presented at trial, and this is how the jury was instructed. The record clearly demonstrates that the Commonwealth sought to prove that appellant did not want to restrain his brother, but rather, shared his evil intentions, and appellant sought to prove just the opposite. Appellant knew the specific acts that the Commonwealth endeavored to prove at trial, he knew precisely with what crime he was charged, and he knew the basis upon which the alleged acts constituted the crime charged. Moreover, appellant is unable to point to any prejudice resulting from the SJC's alleged due process violation, such as the inability to prepare a proper defense. And, as we have already held, any constitutional prejudice that might have been engendered by the variance between the jury instructions and Massachusetts law cannot be reviewed in this proceeding. This is an instructional error case. This court has recognized that [i]n the traditional contemporaneous objection situation, the error inheres in the judge's charge; thus, it is reasonable to require objection at the time of the error. In the Dunn ____ situation, however, the error inheres in the appellate court affirmance; thus, the -22- 22 error has not yet occurred at the time of the judge's charge. Cola, 787 F.2d at 694. In the present case, the error ____ complained of "inheres in the judge's charge," and not "in the appellate court affirmance." The SJC did not violate appellant's due process rights by recognizing that the jury was improperly instructed on felony-murder, and then ruling that the evidence adduced at trial was sufficient to warrant a conviction under Massachusetts law. That the Commonwealth misunderstood the legal principles underlying its "theory" of guilt, and therefore asked for and received, with no objection, a legally deficient jury instruction, does not place this case under the shadow cast by Cole. In effect, ____ appellant asks us to review his claim of instructional error through the back door. We decline to do so. Appellant's final argument is little more than a repetition of his previous argument. According to appellant, because the jury instructions necessarily required proof of the fact that he personally killed the officers, this court should look to whether the evidence was sufficient to support a conviction under that theory. Because there was no evidence to that effect, appellant argues that the SJC should have found, and we must find, that there was insufficient evidence to support his felony-murder conviction. For the reasons that we have already explained, the Commonwealth did not proceed upon the theory that appellant -23- 23 personally killed the officer, and the jury instructions did not require proof of that fact. Therefore, neither this court nor the SJC is required to review the sufficiency of the evidence against that theory. When a petitioner in a habeas action challenges the sufficiency of the evidence, the court's task is to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. _______ Virginia, 443 U.S. 307, 324 (1979). This standard must be ________ applied "with specific reference to the elements of the offense as defined by state law." Campbell v. Fair, 838 F.2d ________ ____ 1, 4 (1st Cir.), cert. denied, 488 U.S. 847 (1988). The SJC _____ ______ did just this, and concluded that the evidence was sufficient to uphold appellant's conviction. Appellant does not contest the accuracy of that ruling. Because one of appellant's claims is procedurally defaulted, and the other two lack merit, his petition for a writ of habeas corpus is denied. Affirmed. Affirmed. ________ Dissent follows. Dissent follows. -24- 24 STAHL, Circuit Judge, dissenting. Although I _____________ agree with the majority that a procedural default could have been argued in this case, and although I can see the logic behind raising such a default sua sponte in many ___ ______ circumstances, I find myself persuaded by Judge Oakes's view that "the strength of petitioner's case" also should be considered by courts deciding whether or not to raise the default sua sponte. See Washington, 996 F.2d at 1454 (Oakes, ___ ______ ___ __________ J., dissenting). And, because, in my view, a non-harmless error undermining the structural guarantee that the jury will make the requisite elemental determinations clearly was _______ committed here, I would reach the merits of petitioner's claim and grant the writ. In my dissenting opinion in Libby v. Duval, _____ _____ No. 93-1588, slip op. at ___ (1st Cir. Mar. __, 1994) (Stahl, J., dissenting), I explain in detail why I believe that the whole-record harmless-error review prescribed by Brecht v. ______ Abrahamson, 113 S. Ct. 1710, 1722 (1993) cannot and should __________ not be utilized by courts reviewing instructional errors which have the effect of precluding juries from making the requisite factual findings in criminal trials.9 Instead, as I argue in Libby, habeas courts reviewing such errors for _____ ____________________ 9. I therefore regard as misleading the majority's citation to Brecht while indicating in dictum that it would not grant ______ the writ even were it to reach the merits of petitioner's claim. See ante at 17. ___ ____ -24- 24 harmlessness should employ the test set forth in Justice Scalia's concurring opinion in Carella v. California, 491 _______ __________ U.S. 263 (1989). Because the error here -- failure to charge the jury that it must find a joint venture to unlawfully carry a firearm in a motor vehicle in order to use the unlawful carrying charge as a predicate offense for felony murder -- had exactly such an effect, see id. at 268-71 ___ ___ (explaining how instructions misdescribing (or failing to describe) elements of crimes and instructions setting up mandatory presumptions on elements of crimes tend to preclude juries from making requisite elemental determinations) (Scalia, J., concurring), I would review the error here according to the dictates of the Carella concurrence. That _______ is to say, I would ask (1) whether the omitted charge was relevant only to an element of a crime of which petitioner was acquitted; (2) whether the omitted charge was relevant only to an element which petitioner admitted; or (3) whether no rational jury could have found what it actually did find ________ ___ ____ and not also find the charged element. See id. at 271. ___ ___ Because prongs one and two of the Carella test clearly do not _______ apply, I will focus on prong three in conducting my analysis. While it is clear that the jury did find both a joint venture to commit the crime of attempted assault and battery with a dangerous weapon and that petitioner was unlawfully carrying a firearm in a motor vehicle (under an -25- 25 instruction that required it to find intent to exercise dominion and control over the firearm), it seems to me that a rational jury, having made these findings, would not ___ necessarily also have found that there was a joint venture to ___________ commit the crime of unlawfully carrying a firearm in a motor vehicle. With regard to the impact of the finding that there was a joint venture to commit attempted assault and battery, the record reveals that petitioner and his brother had abandoned the attempted assault and battery prior to the _____ __ killings. Thus, the intent underlying that charged crime must necessarily have vanished prior to the murders. (The jury's special verdict form, which indicates that the attempted assault and battery felony was not a predicate ___ offense for purposes of the felony murder conviction, implies as much.). This means, of course, that even if the two intents were somehow viewed as "functional equivalent[s]," see id., in nature (and I do not think that they can be so ___ ___ viewed), the shared intent underlying the joint venture to commit the attempted assault and battery finding cannot be ______ the very same as the shared intent which would underlie any (unmade) finding that there was a joint venture to unlawfully carry a firearm. The fact that, in finding the petitioner guilty of unlawfully carrying the firearm, the jury found that petitioner "had joint dominion and control of the -26- 26 firearm with Eduardo and intended to exercise dominion and control" presents, for me, a closer question. As the majority opinion notes (and as the SJC observed on direct appeal), the missing joint venture finding encompasses a determination that petitioner "`intentionally encouraged or assisted Eddie Ortiz in the commission of a felony and that he did so while sharing with Eddie Ortiz the mental state required for that crime.'" Ante at 11 (quoting Ortiz, 560 ____ _____ N.E.2d at 700.) In my view, the jury's "joint dominion and control" finding is the functional equivalent of "the shared __ mental state" necessary for a joint venture finding. It is not, however, the functional equivalent of a finding that petitioner "intentionally encouraged or assisted" Eddie in __________ ________ the commission of the unlawful carrying of the weapon. Thus, the record is devoid of factual findings which are "so closely related to the ultimate fact [to be found] that no rational jury could find those facts without also finding the[e] ultimate fact.'" Id. Accordingly, the error here was ___ not harmless. See id.; see also Libby, slip op. at __-__ ___ ___ ___ ____ _____ (Stahl, J., dissenting). I therefore would grant the writ. -27- 27