**Robert H. POLSKY, Appellant,**

v.

**Ernest S. PATTON, Superintendent of the State Correctional Institution at Camp Hill, the Attorney General of the State of Pennsylvania and District Attorney of Philadelphia County.**

No. 88–1772.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Nov. 27, 1989.

Decided Nov. 30, 1989.

William P. James, Nino V. Tinari, P.C., Philadelphia, Pa., for appellant.

Elizabeth J. Chambers, Dist. Atty's. Office, Philadelphia, Pa., for appellee, Ronald D. Castille, Dist. Atty. of Philadelphia County.

Before SLOVITER and BECKER, Circuit Judges, and LIFLAND, District Judge.*

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Robert Polsky appeals from the order of the district court dated September 6, 1988 denying his petition for a writ of habeas corpus. Polsky claims that the charge to the jury given at his trial for murder was defective because it did not include the element of "malice" and otherwise improperly defined the crime of murder, and that therefore his subsequent conviction and imprisonment is in contravention of due process of law.

I.

Polsky was convicted on April 21, 1976 after a jury trial in the Court of Common Pleas of Philadelphia County of the crimes of murder in the third degree and possession of an instrument of crime as a result of the death of Jerald Donsky on August 6, 1975. The evidence presented at trial established that Polsky, with his father, his girlfriend, and his friend Brian Imme, drove to Donsky's residence. While the others remained in the car, Polsky and Imme entered Donsky's apartment and Polsky demanded $40.00 which Donsky owed Polsky's father for rent. When Donsky showed Polsky that he had only $14 in his wallet, Polsky ordered Donsky, a music student, to play the piano. While Donsky played Beethoven, Polsky shot him in the chest and in the stomach. Imme's testimo-

ny, which was corroborated by Donsky's landlord who lived in the apartment upstairs, was that Donsky then cried out, "Bob, what are you, crazy? Are you trying to kill me?" After Polsky gave an obscene answer to this question, Polsky then shot Donsky a third time, striking him in the chin and killing him.

Polsky, at the time a member of the United States Marine Corps, was arrested in Camp LeJeune, North Carolina after he returned to his base. He was tried before a jury on charges of first-degree murder, third-degree murder, voluntary manslaughter and a weapons charge. After he was found guilty of third-degree murder and the weapons charge, he was sentenced to 10 to 20 years imprisonment on the murder conviction and to a consecutive term of 2½ to 5 years imprisonment on the weapons charge.

On appeal to the Pennsylvania Supreme Court Polsky argued, *inter alia,* that trial counsel was ineffective in failing to object to the jury instructions. The Court found these claims "to be devoid of merit." *Commonwealth v. Polsky,* 493 Pa. 402, 406 n. 1, 426 A.2d 610, 612 n. 1 (1981). Polsky then filed two petitions under Pennsylvania's Post–Conviction Hearing Act, 42 Pa. Cons. Stat. Ann. § 9541. The first petition, which did not challenge the jury instruction, was denied on February 22, 1983, and that order was affirmed. *Commonwealth v. Polsky,* 349 Pa.Super. 619, 503 A.2d 50 (1985). In the second, Polsky challenged the jury instruction on due process grounds. This petition was denied on August 13, 1986, by the Court of Common Pleas of Philadelphia County on the ground that Polsky's due process claims were previously raised in his direct appeal to the Supreme Court of Pennsylvania and rejected by that Court, and that they were therefore "finally litigated".

Thereafter, Polsky filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 2254.

* Hon. John C. Lifland, United States District Judge for the District of New Jersey, sitting by designation.

The magistrate to whom the matter was referred concluded that Polsky's claim was exhausted, and recommended that the petition be denied on the merits.[1] The district court adopted the Magistrate's Report and Recommendation, denied the petition and certified that there was no cause to appeal. Polsky filed a timely notice of appeal. This court granted a certificate of probable cause to appeal.

## II.

Polsky argues that he was denied due process of law because the trial judge, in his instructions to the jury, failed to use the word "malice" when defining the crimes of first and third degree murder, and because the charge given was so contrary to Pennsylvania law that he was convicted of a crime for which he was not charged.[2] The magistrate held that the error in the trial court's failure to use the word "malice" was harmless and that the other alleged instructional errors did not prejudice Polsky. Polsky argues that the district court, which adopted the magistrate's reasoning in dismissing Polsky's petition, erred as a matter of law by using a harmless error analysis. He contends that because malice is an essential element of the offense of murder in Pennsylvania and because the state has the burden of proving every element of a crime, the omission of an instruction on malice impermissibly relieved the state of its burden on this element and thus was an error of constitutional proportion which can never be considered harmless error. The Commonwealth's brief fails to specifically address this issue. Nonetheless, we find ample basis in relevant Supreme Court cases to reject Polsky's claim.

The central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Constitutional errors which do not impinge on the basic tenets of our criminal justice system may be considered harmless even if they have some effect on the factfinding process at trial. *Rose v. Clark*, 478 U.S. 570, 578, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986); *see also Van Arsdall*, 475 U.S. at 681, 106 S.Ct. at 1436. Thus, a constitutional error is harmless if it does not affect "substantial rights" of the defendant and does not have an unfair prejudicial impact on the jury's deliberations. *Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967); *see also Rose*, 478 U.S. at 576–79, 106 S.Ct. at 3105–07.

True, some constitutional errors can never be harmless. *See Chapman*, 386 U.S. at 23, 87 S.Ct. at 827 (citing *Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958) (introduction of coerced confession); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (denial of right to counsel); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (biased adjudicator)). Such errors are those which either "aborted" or "denied" the basic trial process. *Rose v. Clark*, 478 U.S. at 578 n. 6, 106 S.Ct. at 3106 n. 6. Errors to which the harmless error analysis does not apply are "the exception and not the rule." *Id.* at 578, 106 S.Ct. at 3106.

1. The Commonwealth does not contend that Polsky's claim is unexhausted, and we are therefore free to reach the merits if, as we find, Polsky's claims are patently without merit. *See Granberry v. Greer*, 481 U.S. 129, 135, 107 S.Ct. 1671, 1675–76, 95 L.Ed.2d 119 (1987). Moreover, even if the finding of exhaustion was incorrect, in light of the Common Pleas Court's determination that the jury instruction claim was "finally litigated" the avenues for further state relief are now foreclosed. *See Gibson v. Scheidemantel*, 805 F.2d 135, 139 (3d Cir.1986).

2. The Commonwealth argues that because Polsky did not contemporaneously object to the trial judge's instructions as required by Pa.R. Crim.P. 1119(b), (codified at 42 Pa.Cons.Stat. Ann. (Purdon 1989)), this court's review of the denial of his habeas corpus petition on the merits is precluded. Pa.R.Crim.P. 1119(b) provides: "No portions of the charge nor omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate." The magistrate did not discuss this issue and did not base his recommendation to dismiss on the ground of procedural default. Without intimating any view of the validity of the prosecutor's argument, we will consider the ground which formed the basis of the disposition below.

The Supreme Court has applied the harmless error analysis to jury instructions, stating that particularly on collateral attack the petitioner's burden "is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736–37, 52 L.Ed.2d 203 (1976). It has explained that, "[t]he question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' *Cupp v. Naughten*, 414 U.S. [141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)], not merely whether 'the instruction is undesirable, erroneous, or even universally condemned'. *Id.* at 146 [94 S.Ct. at 400]." *Henderson*, 431 U.S. at 154, 97 S.Ct. at 1737.

We turn, therefore, to the record to determine whether the allegedly infirm jury instruction in this case "aborted" or "denied" the basic trial process such that it was fundamentally unfair.

### III.

Pennsylvania defines the crime of criminal homicide as follows:

(a) A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another ...

(b) Criminal homicide shall be classified as murder, voluntary manslaughter, or involuntary manslaughter.

18 Pa.Cons.Stat.Ann. § 2501 (Purdon 1983).

A criminal homicide is first-degree murder when the killing is intentional. 18 Pa. Cons. Stat.Ann. § 2502 (Purdon 1983). An "intentional killing" is a "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.Cons.Stat.Ann. § 2502(d) (Purdon 1983). Second-degree murder is a killing during a felony. 18 Pa.Cons.Stat.Ann. § 2502(b) (Purdon 1983). All other kinds of murder are murder in the third-degree. 18 Pa.Cons.Stat.Ann. 2502(c) (Purdon 1983). It is third-degree murder when the defendant intended to do serious bodily harm, but not to kill. *See Commonwealth v. Carter*, 481 Pa. 495,

498–99, 393 A.2d 13, 15 (1978). In contrast, a criminal homicide when the killer has acted under "a sudden and intense passion resulting from serious provocation" is voluntary manslaughter. 18 Pa.Cons.Stat. Ann. § 2503(a) (Purdon 1983).

The common-law concept of "malice" is incorporated as an element of both first and third-degree murder. *See Commonwealth v. Young*, 494 Pa. 224, 227, 431 A.2d 230, 232 (1981); *Commonwealth v. Coleman*, 455 Pa. 508, 510, 318 A.2d 716, 718 (1974); *Commonwealth v. Wanamaker*, 298 Pa.Super. 283, 287, 444 A.2d 1176, 1178 (1982). "[Malice] consists *either* of an express intent to kill *or* inflict great bodily harm, *or* of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, indicating unjustified disregard for the probability of death or great bodily harm." *Commonwealth v. Kersten*, 333 Pa.Super. 343, 352, 482 A.2d 600, 604 (1984) (emphasis added); *see Commonwealth v. Young*, 494 Pa. at 227, 431 A.2d at 232; *Commonwealth v. Hare*, 486 Pa. 123, 129, 404 A.2d 388, 391 (1979).

At trial, the judge's instructions to the jury included the following definition of murder in the third degree:

Murder in the third degree may be either of two types.

First, murder of the third degree occurs where the defendant does not intend to kill, but intends only to do serious bodily harm and death results. An attempt to do serious bodily harm may be found not only from a direct expression of intent by a defendant, but also it may be inferred from a consideration of all the surrounding circumstances, including but not limited to the nature of the weapon, if any, and the portions of the body wounded and the nature of the violence.

Secondly, murder of the third degree occurs when the defendant intends to kill, but where the intent rises, not from a plan or design, but from sudden and intense passion without serious provocation. Passion, as here used, means any of the emotions of the mind known as anger, rage, sudden resentment, or ter-

ror, rendering the mind incapable of cool reflection. What constitutes serious provocation is primarily a question for the jury. Mere provocative words or slight physical contact are insufficient provocation to constitute serious provocation. Beyond this, whether or not provocation is serious, is a question for the jury. The standard is whether a reasonable person confronted with the particular series of events would become impassioned to the extent that his mind was incapable of cool reflection.

The trial judge later summarized the various degrees of criminal homicide and instructed the jury:

To summarize, first determine whether the defendant intended to kill or inflict serious bodily harm. If he intended to do serious bodily harm, but not to kill, he is guilty of third degree murder. If you find that the defendant intended to kill, he may be guilty of first degree murder, third degree murder or involuntary murder, depending on your additional findings. If you find that the defendant killed intentionally pursuant to a plan or design, then he is guilty of first degree murder. If you find that the defendant killed intentionally, but in the heat of passion and without serious provocation, he is guilty of third degree murder. If you find that the defendant killed intentionally, but in the heat of passion with serious provocation, he is guilty of voluntary manslaughter.

As is evident, the trial court did not expressly use the word "malice" in the instructions. In claiming that such an omission can never be harmless, Polsky relies on cases from those courts of appeals that have held that the failure to include every element of the charged offense in the jury instructions can never be considered harmless error. *See United States v. Howard,* 506 F.2d 1131 (2d Cir.1974); *United States v. Brown,* 616 F.2d 844 (5th Cir. 1980); *Hoover v. Garfield Heights Municipal Court,* 802 F.2d 168 (6th Cir.1986), *cert. denied,* 480 U.S. 949, 107 S.Ct. 1610, 94 L.Ed.2d 796 (1987); *Redding v. Benson,* 739 F.2d 1360 (8th Cir.1984), *cert. denied,*

469 U.S. 1222, 105 S.Ct. 1210, 84 L.Ed.2d 352 (1985); *United States v. Valdez,* 594 F.2d 725 (9th Cir.1979); *United States v. Gaither,* 440 F.2d 262 (D.C.Cir.1971). This court has not yet decided the issue, and need not do so in this case because the jury instruction given here did not omit any essential element of the crime charged.

Looking at the entire charge, as we are obliged to do*, see Cupp v. Naughten,* 414 U.S. at 146–47, 94 S.Ct. at 400; *Hallowell v. Keve,* 555 F.2d 103, 109–10 (3d Cir.1977), we find no merit in Polsky's claim that he was deprived of due process because of the absence of the specific word "malice" from the jury charge. Polsky contends that because an instruction that a jury can presume malice from predicate facts is unconstitutional, *see Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the effect of omitting a malice instruction is the same as a directed verdict. We reject this contention because even a *Sandstrom* violation is subject to the harmless-error rule. *Rose,* 478 U.S. at 581–82, 106 S.Ct. at 3107–08. It follows that a charge that contains the essence of the language omitted is harmless.

It is significant that under Pennsylvania law malice may be either expressed by the defendant or implied from his or her words or conduct and the surrounding circumstances. *Commonwealth v. Hinchcliffe,* 479 Pa. 551, 556, 388 A.2d 1068, 1070–71 (1978); *see Commonwealth v. Coleman,* 455 Pa. at 512, 318 A.2d at 716. The intentional use of a deadly weapon on a vital part of the victim's body permits the jury to infer that defendant had a specific intent to kill. *Commonwealth v. Crowson,* 488 Pa. 537, 543, 412 A.2d 1363, 1365 (1979); *Hinchcliffe,* 479 Pa. at 556, 388 A.2d at 1071; *Commonwealth v. Murray,* 460 Pa. 605, 608, 334 A.2d 255, 257 (1975); *Commonwealth v. Toledo,* 365 Pa.Super. 224, 228, 529 A.2d 480, 482 (1987).

The charge clearly instructed that Polsky could be convicted of murder in the third degree only if the jury first found that he "intended to kill or inflict serious bodily harm." Because malice is defined as an

intent to kill or inflict serious bodily harm, the charge given was the functional equivalent of a charge of malice.[3] It is true that malice can also be found from a lesser degree of culpable intent than that charged, *see Kersten,* 333 Pa.Super. at 352, 482 A.2d at 604, but such an omission was in Polsky's favor and was therefore patently harmless.

### IV.

Polsky's other claim is that he was denied due process by the judge's instructions defining the various degrees of criminal homicide in general and murder in the third degree in particular. This claim too is wholly without merit. If there were errors in the trial court's charge, they were plainly harmless to Polsky for they were actually in his favor. The trial court correctly charged that the jury could not convict Polsky of murder unless they found that Polsky had the intent to either kill or do serious bodily injury. It also correctly instructed the jury that if they found that Polsky did not intend to kill Donsky, but only to do him serious bodily harm, then he was guilty of third degree murder.

The judge may have been incorrect in instructing the jury that if they found that Polsky "killed intentionally, but in the heat of passion and without serious provocation, he is guilty of third degree murder."[4] The Pennsylvania Supreme Court has stated that a killing committed with the intent to kill, without serious provocation, is *not* reduced from first-degree murder to third-degree murder by the presence of passion. *See Commonwealth v. Wright,* 458 Pa. 236, 328 A.2d 514 (1974). Therefore, even if the jury believed that Polsky acted in the heat of passion and without serious provocation, they would have been justified in finding Polsky guilty of first-degree murder, rather than third-degree murder. Thus, this error in the charge could not have prejudiced Polsky.

---

3. The Pennsylvania Suggested Criminal Jury Instruction on Criminal Homicide § 15.25101A recognizes this, referring to malice as "a shorthand way of referring to any of three different mental states that the law regards as being bad enough to make a killing murder."

### V.

For the reasons set forth above, we will affirm the order of the district court denying habeas corpus relief.

---

4. *But see* Pennsylvania Suggested Jury Instructions § 15.202(c) (Crim.) (Note) (1988) suggesting that the charge may indeed have been correct as given.