ALITO, Circuit Judge,
dissenting.
The majority’s decision in this case is troubling. In 1983, Clifford Smith was convicted in state court for first-degree murder. At his trial, the prosecution introduced strong evidence that Smith and another man, Roland Alston, robbed a pharmacy and that, after the pharmacist was ordered to lie face down on the floor, Smith proceeded to execute him with a gunshot to the head. Fourteen years later, when retrial will almost certainly be difficult at best, the majority holds that Smith’s federal habeas petition must be granted based on a perceived ambiguity in the jury instructions. According to the majority, certain references to the concept of an “accomplice” are ambiguous in that they could be interpreted to mean either “ ‘accomplice in the killing,’ ‘accomplice in the robbery,’ or both.” Maj. Op. at 412. This supposed ambiguity, the majority concludes, not only created confusion about the requirements of state law but rose to the level of a federal due process violation. The majority takes this course even though (1) the trial judge, before making the references to “accomplice” that the majority finds to be ambiguous, provided an accurate and detailed definition of that term which, if read into all of the challenged references, *420 renders them accurate; (2) Smith’s attorney did not object at trial to the relevant portions of the jury charge; and (3) Smith never argued in either of his two appeals to the Pennsylvania Supreme Court that these portions of the jury instructions violated either state law or the Due Process Clause. Under these circumstances, I cannot agree with the majority’s decision.
I.
An important threshold question is whether Smith exhausted state remedies. Although the Commonwealth has not raised this issue, I believe that we should nevertheless address it under the circumstances present here.[1] In Granberry v. Greer, 481 U.S. 129, 134-35, 107 S.Ct. 1671, 1675-76, 95 L.Ed.2d 119 (1987), the Supreme Court stated that “both comity and judicial efficiency” might make it appropriate for a court to raise the issue of exhaustion on its own where a case “presents an issue on which an unresolved question of fact or of state law might have an important bearing.” The present case falls squarely within this description. As noted, the majority’s decision is founded upon its conclusion that the jury instructions inaccurately explained Pennsylvania’s rule of accomplice liability. Before considering whether this purported misstatement of state law rose to the level of a federal due process violation, it would be helpful to have the benefit of a decision by the Pennsylvania courts on the underlying issue of state law.
We have no such decision, however, because Smith did not challenge the relevant portions of the jury instructions on any ground in either of his two appeals to the Pennsylvania Supreme Court. Not only did he fail to raise the federal due process claim on which the majority’s decision rests, but he did not even contend that the instructions misstated state law.[2]
*421 Although Smith did not exhaust state remedies, “[a] petitioner’s failure to exhaust state remedies is ... excused ... when state law ‘clearly foreclose^] state court review of [the] unexhausted claims.’” Doctor v. Walters, 96 F.3d 675, 680 (3d Cir.1996) (quoting Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir.1993)). Here, the Pennsylvania courts might well hold that review of Smith’s claim is foreclosed under the Post Conviction Relief Act, 42 Pa. Cons.Stat. Ann. S. §§ 9541-46 (Supp.1996). In Doctor, 96 F.3d at 681, we explained that under Pennsylvania law
“[a]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconvietion proceeding.” [42 Pa. Cons.Stat. Ann.] § 9544(b). As the Pennsylvania courts have noted, “nearly all claims are waived under the PCRA since nearly all claims potentially could have been raised on direct appeal____” Commonwealth v. Eaddy, 419 Pa.Super. 48, 614 A.2d 1203, 1207-OS (1992), appeal denied, 534 Pa. 636, 626 A.2d 1155 (1993); accord Commonwealth v. Stark, 442 Pa.Super. 127, 658 A.2d 816, 820 (1995).
We recognized, however, that PCRA review might not be foreclosed if a petitioner is “able to demonstrate a ‘miscarriage of justice’ warranting ‘departure from the PCRA’s stringent eligibility requirements.’” Doctor, 96 F.3d at 681 (quoting Commonwealth v. Fiore, 445 Pa.Super. 401, 665 A.2d 1185, 1193 (1995) (Hoffman, J., concurring) (citations omitted), appeal denied, 544 Pa. 623, 675 A.2d 1243 (1996)). I question whether at this time the Pennsylvania courts would entertain Smith’s challenge to the jury instructions, but I would certainly request briefing from the parties on this question.
If, as seems likely, PCRA review is foreclosed because of Smith’s failure to raise his federal due process claim in the prior state-court proceedings, we should consider the doctrine of procedural default. See Coleman v. Thompson, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1 (1991). This doctrine, like exhaustion, has not been raised by the Commonwealth, but I believe that we should apply this doctrine nevertheless. Our court, see Hull v. Freeman, 932 F.2d 159, 164 n. 4 (3d Cir.1991), and others have held that procedural default may be raised sua sponte by a court of appeals. See, e.g., Ortiz v. Dubois, 19 F.3d 708, 714 (1st Cir.1994); Washington v. James, 996 F.2d 1442 (2d Cir.1993); Har-diman.v. Reynolds, 971 F.2d 500, 502-04 & n. 4 (10th Cir.1992).[3] In Washington, the Second Circuit explained that “[p]rinciples of comity and federalism bear on the relations between court systems, and those relations will be affected whether or not the litigants have raised the issue themselves.” 996 F.2d at 1448. In Hardiman, the Tenth Circuit, quoting our opinion in Brown v. Fauver, 819 F.2d 395, 398 (3d Cir.1987) (holding that a court could raise exhaustion sua sponte), stated that it was appropriate for a court to raise the issue of procedural default because it implicates “ ‘values that may transcend the concerns of the parties to [the] action.’ ” 971 F.2d at 502.
*422 In Ortiz, the First Circuit, when confronted with a federal constitutional claim closely resembling Smith’s, held that it was appropriate to raise the issue of procedural default on its own motion. The petitioner in Ortiz argued that “his right to due process was violated because the jury was not properly instructed on the elements of felony-murder under Massachusetts law, and therefore did not find every element of the offense beyond a reasonable doubt.” 19 F.3d at 710. Although the petitioner argued on direct appeal that the instructions were deficient, the Supreme Judicial Court of Massachusetts declined to conduct a plenary review of the merits of his claim because he had not objected to the instructions at trial. Id. 19 F.3d at 713. Instead, the Supreme Judicial Court “limited its inquiry to whether the error gave rise to a substantial likelihood of miscarriage of justice.” Id. 19 F.3d at 714. Accordingly, the First Circuit found that “the state procedural default [was] clear on the face of the record,” and thus found it unnecessary to review the merits of the petitioner’s claim.[4]
Like the First Circuit in Ortiz, I think that it is appropriate for us to raise the issue of procedural default in this case on our own motion, particularly since Smith’s federal constitutional claim is grounded on an issue of state law. Since Smith has not had an opportunity to address the issue of procedural default, I would request further briefing on that issue before determining whether there is any basis for excusing default in this case.
The majority refuses to consider the issues of exhaustion and procedural default — indeed, refuses even to request briefing on these serious issues. The majority voices concern that consideration of these issues would “result in undue delay.” Maj. Op. at 409; see also id. at 408. This concern is curious — and not only because of the pace of the postconviction proceedings to date. Consideration of procedural default would not simply delay a decision on the merits of Smith’s claim; rather, it holds the potential for precluding a decision on the merits of that claim. If the claim is procedurally defaulted, if Smith cannot show cause and prejudice, and if no other exception applies (questions on which I express no view without hearing from the parties), then neither the state nor the federal courts would decide the merits of Smith’s claim. Obviously, then, the refusal to consider procedural default cannot be defended on the ground that to do so would only delay an inevitable decision on the merits.
The majority also contends that the jury instructions resulted in a “miscarriage of justice.” As I show below, however, the instructions at issue here were at most ambiguous — and that is undoubtedly why they did not even elicit an objection from Smith’s trial counsel, why challenges to these instructions were not included among the numerous arguments raised in Smith’s two appeals to the Supreme Court of Pennsylvania, and why the district court judge in this federal habeas corpus proceeding thought that the alleged errors that the majority is willing to label “a miscarriage of justice” were meritless and did not even warrant discussion. See Smith v. Horn, 1996 WL 172047 (E.D.Pa.1996), page 12.
There is one reasonable argument that can be made in support of the conclusion that we should not raise the doctrines of exhaustion and procedural default on our own, i.e., that these doctrines, which serve to protect state prerogatives, should be raised by the state’s attorneys. But, as I previously noted, our court and others have recognized that the values served by these doctrines “may transcend the concerns of the parties to an action.” Brown v. Fauver, 819 F.2d at 398.
Aiming to curb federal habeas corpus abuses, particularly in death penalty eases, Congress endorsed this view when it enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1221. In capital cases subject to chapter 154, 28 U.S.C. §§ 2261-66, Congress prohibited federal courts from considering a claim unless it was “raised and decided on the merits *423 in the State courts.” 28 U.S.C. § 2264(a). In other cases, Congress provided that a state may not be deemed to have waived exhaustion unless it does so expressly. 28 U.S.C. § 2254(b)(3). These new provisions do not apply here (see footnote 1, supra), but they are animated by the same respect for the state court systems that informed our court’s prior decisions. Accordingly, I believe that we should not proceed to review the merits of Smith’s due process claim without considering the issues of exhaustion and procedural default. However, since the majority has sMpped over these questions and plunged into the merits of Smith’s federal constitutional claim, I will address the merits of that claim as well.
II.
A. The Pennsylvania rule of accomplice liability is as follows:
When causing a particular result is an element of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense if he acts with the kind of culpability, if any, with respect to that result that it is sufficient for the commission of the offense.
18 Pa. Cons.Stat. Ann. § 306(d) (emphasis added). An “accomplice” is defined in pertinent part as follows:
A person is an accomplice of another person in the commission of an offense if:
(1) with the intent of promoting or facilitating the commission of the offense, he:
(i) solicits such other person to commit it; or
(ii) aids or agrees or attempts to aid such other person in planning or committing it.
18 Pa. Cons.Stat. Ann. § 306(c) (emphasis added). Thus, in order for an “accomplice” to be criminally responsible for a particular offense, the “accomplice” must have “the intent of promoting or facilitating the offense” — which means that the accomplice must at a minimum possess the intent necessary for conviction of that offense as a principal.
In this case, Smith was charged with first degree murder, robbery, possession of instruments of crime, and conspiracy. The trial judge instructed the jury on the elements of all of these offenses, as well as the lesser included homicide offenses of second and third degree murder and voluntary manslaughter.
Before setting out the elements of these offenses, however, the trial judge instructed the jury on the principles of accomplice liability, which were relevant, not only to the first degree murder charge, but to all of the other substantive offenses as well. The trial judge accurately stated that an accomplice is criminally responsible for the acts of the principal. CA 1028. “Therefore,” the court stated, “it is necessary that you understand and that we spell out what is meant under our Crimes Code by the term accomplice.” See CA 1028-29. Tracking the language of 18 Pa. Cons.Stat. Ann. § 306(c)(1), the trial judge then explained that a person is an accomplice “if with the intent of promoting or facilitating the commission of a crime he solicits, commands, encourages or requests the other person or persons to commit that crime or crimes, or aids, agrees to aid, or attempts to aid the other person in the planning or committing the crime.” Id. (emphasis added). Under this instruction, as under 18 Pa. Cons. Stat. Ann. § 306(c), a person can be an accomplice with respect to the commission of a particular crime only if that person has “the intent of promoting or facilitating” the commission of “that crime.”
When a trial judge, in instructing a jury, provides a definition of a complicated legal term, the judge is not generally required to repeat that definition every time the term is subsequently employed. Rather, the judge may reasonably rely on the prior definition, and that is what the trial judge did here— without objection. If the previously provided definition is read into the instructions whenever the judge referred to an “accomplice,” the judge’s instructions are correct. Under this procedure, every reference to “an accomplice” should be read as a reference to an “accomplice” with respect to the particular offense or offenses that the judge is discussing. In finding that certain references to the *424 concept of an “accomplice” are ambiguous, the majority ignores the significance of the definition that preceded these references.
For example, the majority holds (Maj. Op. at 411) that the trial judge violated due process when he gave the following instruction:
[T]he elements of first degree murder are the unlawful killing of another person done intentionally; that is, willfully, deliberately and with premeditation, plus malice, as I will define that term to you. If these elements are established beyond a reasonable doubt, you may, on the theory that one was the perpetrator and the other the accomplice, find Clifford Smith guilty of murder in the first degree....
CA 1035. The majority finds this instruction objectionable because it did not clearly convey the message that, if Alston pulled the trigger, Smith could be convicted of first degree murder only if Smith was Alston’s “ ‘accomplice in the killing’ and not simply [his] accomplice in the robbery.’ ” Maj. Op. at 411. But if the previously supplied definition of an “accomplice” is applied, this alleged ambiguity is dispelled. As noted, an “accomplice” must have the intent required for the offense in question (see Pa. Cons.Stat. Ann. § 306(e); CA 1029); therefore, to be an accomplice in a first degree murder a person must have the intent required for that offense, i.e., the person must act intentionally, willfully, deliberately, and with premeditation. 18 Pa. Cons.Stat. Ann. §§ 2502(a), (d).
To be sure, if Smith’s trial attorney had objected to this and the other instructions at issue on the ground that they were susceptible to the misinterpretation that troubles the majority, if the trial judge had overruled this objection, if the objection had been raised on direct appeal, and if we sat on a Pennsylvania appellate court, rather than a federal court, I could understand a decision requiring a new trial. But for a federal appeals court to order a new trial 14 years later based on such a previously unchallenged ambiguity is shocking.
The remaining portions of the instructions that the majority has singled out are similar. The majority objects (Maj. Op. at 411-12) to certain instructions in which the trial judge attempted to explain in generic terms the application of the principles of accomplice liability to any of the homicide offenses that were before the jury, i.e., first, second, and third degree murder and voluntary manslaughter. See CA 1030-32. Probably because he was speaking about all of these offenses at the same time, the judge did not at this point specify the intent required for conviction for each offense (he did that a few pages later), but if the definition of an accomplice that he gave on the previous page is applied, the challenged instructions were correct. In retrospect, one might argue that it was inadvisable for the trial judge to have attempted to explain in one breath how the principles of accomplice liability relate to all four of the homicide offenses that were before the jury, and one might fault the particular language that the judge chose. But I see nothing in these instructions that justifies federal habeas relief.[5]
Having identified what is at most an ambiguity in the jury instructions on a point of state law, the majority alchemizes this ambiguity into a violation of the Due Process Clause. The majority writes:
In this case, the misapplication of state law resulted in a federal constitutional error. It is well-settled that “the Due Process Clause [of the Fourteenth Amendment] protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.” In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, *425 1073, 25 L.Ed.2d 368 (1970); see also Victor, [v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994)], 511 U.S. at 5, 114 S.Ct. at 1242; Francis, 471 U.S. at 317, 105 S.Ct. at 1972-73; Sandstrom v. Montana, 442 U.S. 510, 521, 99 S.Ct. 2450, 2458, 61 L.Ed.2d 39 (1979). A jury instruction that omits or materially misdescribes an essential element of an offense as defined by state law relieves the state of its obligation to prove facts constituting every element of the offense beyond a reasonable doubt, thereby violating the defendant’s federal due process rights. See Carella v. California, 491 U.S. 263, 265, 109 S.Ct. 2419, 2420, 105 L.Ed.2d 218 (1989) (per curiam); Rock, 959 F.2d at 1245-46; see also Polsky v. Patton, 890 F.2d 647, 651 (3d Cir.1989) (no due process violation where jury instruction “did not omit any essential element of the crime charged”).
Maj. Op. at 414-15.
In essence, the majority holds that the Due Process Clause is violated whenever a state judge, in instructing a jury on an element of a state offense, gives an ambiguous instruction that prejudices the defendant-even if defense counsel does not object. None of the decisions cited by the majority supports this holding. In Winship, the Supreme Court held that the Due Process Clause requires proof beyond a reasonable doubt to support a finding that a juvenile committed an act that would constitute a crime if committed by an adult. Sandstrom, Francis, and Carella all held that the Due Process Clause was violated where jury instructions in criminal cases set out either a conclusive presumption or a mandatory re-buttable presumption that relieved the prosecution of the burden of persuasion on the presumed fact. Victor reviewed instructions that defined the concept of reasonable doubt. No Supreme Court case cited by the majority — or any other Supreme Court decision of which I am aware — has held that the Due Process Clause is violated whenever a state trial judge, in instructing a jury on the elements of a state offense, uses ambiguous language that prejudices the defendant. Nor is the majority’s decision supported by either of the Third Circuit eases it cites. In Rock, 959 F.2d at 1245-46, we merely restated in dicta the holdings of Winship and Sand-strom. In Polsky, we held that a particular instruction conveyed the essence of the element that was allegedly omitted. 890 F.2d at 651.
Although not cited by the majority, the Supreme Court opinion that appears to be most closely on point, Henderson v. Kibbe, 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977), cuts against the majority’s argument. In Henderson, a federal court of appeals, relying on Winship, ordered that federal ha-beas corpus relief be granted because the trial judge (without objection) failed to instruct the jury on an essential element of the offense of second-degree murder. Reversing, the Supreme Court wrote:
Orderly procedure requires that the respective adversaries’ views as to how the jury should be instructed be presented to the trial judge in time to enable him to deliver an accurate charge and to minimize the risk of committing reversible error. It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.
The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court’s judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is “whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,” Cupp v. Naughten, 414 U.S. at 147, 94 S.Ct. at 400, not merely whether “the instruction is undesirable, erroneous, or even ‘universally condemned,’” id. at 146, 94 S.Ct. at 400.
431 U.S. at 154, 97 S.Ct. at 1736-37 (footnotes omitted).
Here, the instructions cited by the majority did not “ ‘so infeet[ ] the entire trial that the resulting conviction violates due process.’ ” Id. (citation omitted). Thus, I would reject Smith’s due process claim.
*426 It is a cardinal principle that “it is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.” Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Our court has emphasized this important rule. Geschwendt v. Ryan, 967 F.2d 877, 888-89 (3d Cir.1992) (en banc); Zettlemoyer v. Fulcomer, 923 F.2d 284, 309 (3rd Cir.1991). Cf. Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir.1997). The majority’s extension of Winship and related precedents threatens to undermine this important principle and to claim for a federal habeas court the power to decide, long after a state trial has been completed, whether previously unchallenged jury instructions set out the requirements of state law with sufficient clarity to satisfy the federal court’s taste. “[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.” Pennhurst State School & Hospital v. Hald-erman, 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984). The majority’s decision here not only works an injustice in an important case but it creates a dangerous precedent. I must therefore dissent.
Before: SLOVITER, Chief Judge, STAPLETON, MANSMANN, GREENBERG, SCIRICA, COWEN, NYGAARD, ALITO, ROTH, LEWIS, and McKEE, Circuit Judges.*

. On direct appeal, Smith argued that the trial judge erred in refusing to give three instructions requested by the defense, namely, Nos. 8, 11, and 12. Number 8 defined first degree murder; number 11 defined involuntaiy manslaughter; and number 12 defined the terms "intentionally," "knowingly,” "recklessly," and "negligently.” None of these requested instructions related to the claim on which the majority relies.
The Supreme Court of Pennsylvania rejected Smith’s argument regarding the requested instructions on involuntary manslaughter on the ground that the evidence at trial did not support such a charge. Commonwealth v. Smith, 511 Pa. 343, 513 A.2d 1371, 1377-78 (1986). The court rejected Smith’s argument concerning the other two requested instructions on the ground that the substance of those requests was adequately covered by the trial judge. The state supreme court wrote:
It is established that a trial court is not required to accept points submitted by counsel verbatim, but rather is free to select its own forms of expression. Commonwealth v. McComb, 462 Pa. 504, 509, 341 A.2d 496, 498 (1975). “The only issue is whether the area is adequately, accurately and clearly presented to the jury for their consideration.” Id. We have reviewed the record in the present case and find no inadequacies in the trial court’s instructions as to elements of the crime of murder of the first degree and as to pertinent requirements of criminal culpability.
513 A.2d at 1377.
This passage cannot reasonably be interpreted to mean that the state supreme court sua sponte considered the federal due process claim now before us. Indeed, it would be utterly unrealistic to interpret the court’s statements to mean even that it had rejected all possible objections to the instructions that might be raised under state law. To go further and read that statement as a rejec *421 tion of an unraised federal due process claim would be absurd.

. Cf. Caspari v. Bohlen, 510 U.S. 383, 389, 114 S.Ct. 948, 952-53, 127 L.Ed.2d 236 (1994) (non-jurisdictional Teague rule may but need not be raised by federal court sua sponte); Granberry, 481 U.S. at 134-35, 107 S.Ct. at 1675-76 (same for exhaustion); Patsy v. Board of Regents of Fla., 457 U.S. 496, 515 n. 19, 102 S.Ct. 2557, 2567 n. 19 (1982) (same for Eleventh Amendment defense). Compare Trest v. Whitley, 94 F.3d 1005 (5th Cir.1996), petition for cert. granted,-U.S. -, 117 S.Ct. 1842, 137 L.Ed.2d 1046 (1997) (presenting question whether court of appeals is required to raise procedural default). The petition in Trest argues that, under Gray v. Netherland, -U.S.-,-, 116 S.Ct. 2074, 2082, 135 L.Ed.2d 457 (1996), procedural default is an affirmative defense that is lost if not properly raised by the state. But while it is certainly true that a state may lose the "right" to have the doctrine of procedural default considered if it does not properly raise that issue, see Gray, at -, 116 S.Ct. at 2082, it is far from clear that Gray meant to go further and say that the lower federal courts lack the discretion to raise the issue on their own. See id. (citing Schiro v. Farley, 510 U.S. 222, 227-28, 114 S.Ct. 783, 787-88, 127 L.Ed.2d 47 (1994)) (refusing as a matter of discretion to consider Teague bar where not raised at cert. petition stage), and Jenkins v. Anderson, 447 U.S. 231, 234 n. 1, 100 S.Ct. 2124, 2127, 65 L.Ed.2d 86 (1980) (refusing to consider procedural default where raised for the first time in Supreme Court).

. The First Circuit did state that it would have rejected the claim even if it had reached the merits.

. The majority goes so far as to cite alleged ambiguities in the instructions on criminal conspiracy as support for its decision to strike down Smith’s first degree murder conviction. See Maj. Op. at 411; CA 1047-48. This argument is farfetched indeed. By this point in the instructions, the trial judge had turned to the last "remaining crimes in the Information, ... the crimes of criminal conspiracy to commit the various robberies ... criminal conspiracy to commit first degree murder and murder and criminal conspiracy to commit the act of possession of instruments of crime.” CA. 1043. If there were any serious flaws in these instructions — and I see none — they could at most undermine Smith’s conspiracy conviction, not his conviction for first degree murder.